PARKER (ROGERS v.). See Case No. 12,-018.

PARKER (RULE v.). See Case No. 12,125.

---

## Case No. 10,748.

### PARKER v. SEARS et al.

[1 Fish. Pat. Cas. 93; [1] 4 Pa. Law J. Rep. 443; 3 Am. Law. J. (N. S.) 82; 7 Leg. Int. 138.]

Circuit Court, E. D. Pennsylvania. Aug. 26, 1850.

PATENTS—MOTION FOR INJUNCTION —ANSWER REGARDED AS AN AFFIDAVIT—TITLE AND INFRINGEMENT ADMITTED AS PALPABLE—EQUIVOCAL ANSWER.

1. The practice, upon a motion for a preliminary injunction, of treating an answer—directly and unequivocally denying the facts set forth in the bill—merely as an affidavit, is a relaxation of the settled rules of practice in the English courts of equity, which rules should be followed unless changed by the written rules of the courts of the United States.

[Cited in Farmer v. Calvert Lithographing, etc., Co., Case No. 4,651.]

2. No interlocutory injunction should issue, unless the complainant's title, and the defendant's infringement are admitted, or are so palpable and clear that the court can entertain no doubt on the subject.

[Cited in American Nicholson Pavement Co. v. Elizabeth, Case No. 312; Bailey Wringing Mach. Co. v. Adams. Id. 752; Cross v. Livermore, 9 Fed. 607.]

3. Where, however, the answers or affidavits are equivocal and evasive, or disclose a state of facts which show that the conclusions drawn from them are clearly erroneous and founded upon a mistake of law, an injunction will issue.

4. The court is not bound upon motions for preliminary injunctions to decide doubtful and difficult questions of law, or disputed questions of fact, nor to exercise this high and (if executed rashly) dangerous power before the alleged offender shall have an opportunity for a full and fair hearing.

[See Bailey Wringing Mach. Co. v. Adams, Case No. 752; Chaffraix v. Board of Liquidation, 11 Fed. 647.]

5. An injunction will be refused if the verdicts establishing the complainant's title have been obtained on such inconsistent and contradictory claims, or have left the plaintiff's title in such a doubtful shape, that the court can not say with certainty what is and what is not an infringement of the patent.

6. An injunction will also be refused where possession is very vaguely stated in the bill, and is met and avoided by allegations and proof of a more peaceable and exclusive possession by the defendants.

7. The chief object of issuing such writs before the final hearing of a cause, is to prevent irreparable mischief, not to give the complainant

---

[2] [3 Ban. & A. 552; 14 O. G. 602.]

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

the means of coercing a compromise on his own terms, from the inevitable injury that the defendants must suffer by the stoppage of their mills or manufactories.

[Quoted in Eastern Paper-Bag Co. v. Nixon, 35 Fed. 754. Cited in Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 803. Ney Manuf'g Co. v. Superior Drill Co., 56 Fed. 154.]

8. In particular cases, as where the patent is for a machine to make some article of manufacture, and the profit arises from the monopoly of such articles, a court will issue an injunction in the last month or week of the life of the patent. But where the plaintiff can be compensated in damages, an injunction will not under ordinary circumstances be granted during the last few weeks of a patent.

[Cited in Morris v. Lowell Manuf'g Co., Case No. 9,833.]

9. Patents should be construed liberally to support the claims of meritorious inventors. But there should not be a liberality of construction which permits the inventor to couch his specification in such ambiguous terms that its claims may be expanded or contracted to suit the exigency.

10. A patentee has the right to disclaim anything which has been claimed through "inadvertence or mistake," but when a patentee claims anything as his own, courts can not reject the claim, though the inventor himself may disclaim it at the trial.

[This was a bill in equity by Oliver H. P. Parker against John Sears and others.]

These were applications for provisional injunctions to restrain the infringement of the letters patent granted to Zebulon and Austin Parker, October 19, 1829, for what is known as the "Parker water-wheel," which patent is more particularly referred to in the case of Parker v. Hulme [Case No. 10,740].

Titus, Campbell & Cadwallader, for complainant.

Mallery & Penrose, for defendants.

GRIER, Circuit Justice. Of the one hundred bills filed by the complainant, and against persons charged with infringing his patent, some seventy have been argued together, on notice of motions for special injunctions. Most of the points involved are common to all the cases, and the different types of alleged infringement do not exceed six or seven. The argument has been conducted by counsel with great zeal and ability, with very great learning, and at very great length. The whole history and science of hydrodynamics has been discussed, and numerous conflicting affidavits read, on the apparent assumption that the court, in anticipation of the final hearing, will, on these preliminary motions, decide the whole merits of cases involving difficult and doubtful points of law, numerous and contested questions of fact, and rights of property of large amount, with the haste and expedition of a court of piepoudre. By a neglect or relaxation of the settled rules of practice in the English courts of equity (which we are bound to follow, unless changed by the written rules of this court, as established by the supreme court or ourselves), a sort of local practice has grown up, the evils of which we are beginning to feel.

We have frequently said, on the authority of some of the Eastern circuits, and some supposed custom of this district, that the answer of defendant—directly and unequivocally denying the facts set forth in the bill—should be treated merely as an affidavit, which might be contradicted by other affidavits, and should not have the technical effect of precluding contradictory testimony. The consequence has been that both parties appear on the argument of their preliminary motions, armed with quires of conflicting depositions, and the court are expected to try and decide the whole facts and law of the case, as put in issue by the pleadings. Even when the title of plaintiff is admitted, the question of infringement is often one of great doubt and difficulty, depending on questions of mechanics, in which both practical and scientific men entirely differ. Difficult legal questions, arising from the construction of long and perhaps obscure specifications, on which judges often may, and lawyers always do, differ, are frequently involved. Yet the court are expected in this summary way to anticipate the finding of a jury, and the final decision of the case on full hearing. And this must continue to be the case, unless we adhere more rigidly to the rule of considering the affidavit and answer, especially if accompanied with one or two depositions of witnesses, denying the infringement, as conclusive on these preliminary motions. No interlocutory injunction should issue unless the complainant's title, and the defendant's infringement are admitted, or are so palpable and clear that the court can entertain no doubt on the subject. But cases often occur where the answers or affidavits are equivocal or evasive, or disclose a state of facts which show that the conclusions drawn from them are clearly erroneous, and founded on a mistake of the law: as when an infringement is denied, and a model admitted, which shows a palpable infringement, and it is evident that the denial is made under a gross mistake of the true and settled construction of the patent; or, where the originality of the invention is denied in general terms, and infringement is admitted, and the patent has been fully established at law, and it is evident that the denial of its validity is but a matter of obstinate opinion, or a mistake of law. Such cases, and such only, can be considered as exceptions to the general rule. The court are not bound, in this stage of the cause, to decide doubtful and difficult questions of law, or disputed questions of fact, nor exercise this high and dangerous power (if exercised rashly) in doubtful cases, before the alleged offender shall have an opportunity of a full and fair hearing.

The terms of this court are almost wholly occupied in the trial of patent cases; and perhaps these hints of our intentions in fu-

ture cases to adhere more rigidly to the rules of practice, may tend, in some measure, to hinder us, as well as the learned counsel, from the painful necessity of spending our whole vacations in anticipating and duplicating these long and difficult investigations, and trying the merits of every case on these preliminary motions.

In stating our reasons for the conclusions to which we have arrived, with regard to the present motions, it is not our intention to notice all the numerous points, both of law and of mechanics, which have been pressed on our consideration with so much learning and ability, or to anticipate a construction of the plaintiff's patent on points which are, perhaps, now for the first time made.

As to many of the cases, if not all, it is a sufficient reason for refusing the present motions, that the question of infringement, even when the facts are admitted, is far from being clear or devoid of doubt. This remark applies especially to those of the defendants who use what are called the Kraüts, the Wertz, the Howd, and the Greenleaf wheels. The patentee declares the principle on which his improvement is founded, to be "that of producing a vortex within reaction wheels, which, by its centrifugal force, powerfully accelerates the velocity of the wheel;" and the machines described in his specification are confined to the application or development of that principle alone. The wheels just mentioned do not appear to be constructed with a view to produce a vortex within reaction wheels, or to contain any colorable imitation of the machines described by the complainant's patent. But we would not be understood as deciding definitively that they do not infringe, but (what is sufficient for this occasion) that it is not clear that they do.

We shall now proceed to state same reasons for refusing the present motions, which equally apply to all the cases, even where the question of infringement is not so doubtful as in those just mentioned, and they are:

1st, because the verdicts establishing the complainant's title have been obtained on inconsistent and contradictory claims, so that the court can not say with certainty, what is or what is not an infringement of the patent.

And, 2nd, because the possession so vaguely alleged in the bill, is met and avoided by the allegations and proof of a more peaceable, and exclusive possession by defendants (at least in Pennsylvania), under the patents and machines purchased and used by them.

And, 3d, even if these positions were not correct, there are other reasons (hereafter to be stated) why it would not be a proper exercise of discretion in the court to issue injunctions under the particular circumstances of these cases.

1. The complainant charges in his bill that the patentees have established their title by a suit at law in this court, in the case of

Parker v. Hulme [supra], and that "they have erected and put in operation many machines in different parts of the country, by which the water-power thereof has been much augmented." The defendants deny the validity of the patent, and especially that the patentees were the original inventors of certain machines specially claimed in their specification. (1.) The compound vertical reaction wheels, with two or more wheels on one horizontal shaft. (2.) Or "the spouts which conduct the water into the wheels with their spiral termination." (3.) Or the improvement in the reaction wheels "by making the buckets as thin at both ends as they can safely be made, and the rim no wider than sufficient to cover them." (4.) Or the "hollow boxgate, in any form, either cylindrical, square, or irregular"—and have produced some evidence tending to prove these allegations. They admit that in the case of Parker v. Hulme, the jury found specially that the patentees "were the first to invent and apply to use two or more reaction wheels arranged in pairs on one horizontal shaft." They insist that this verdict should have no effect as against them, because they were not parties to that suit, and produce the affidavits of ten witnesses tending to prove the verdict incorrect, which were not examined in that case, or known to the defendant. They aver, also, that in the case of Parker v. Stiles [Case No. 10,740], tried in Ohio, the same objection was made to the patent, and so fully proven that the plaintiff admitted the fact, but denied that the patent claimed such a machine, and produced the charge of the judge in that case, deciding "that the plaintiff's patent did not claim the duplication of wheels on a horizontal shaft," and giving as a reason for this construction "that this arrangement of wheels on a horizontal shaft has been so long used and known, that it cannot be presumed the patentees were ignorant of it and intended to claim it as new." They aver, also, that "in the case of Parker v. Moreland [unreported], tried in Indiana, there was a verdict for defendant, deciding all the points against the claim of the plaintiff." To meet the allegation of possession on the part of the patentees, the answer avers also, "that the wheels used by the defendants have been publicly used by them for a long space of time, and that the complainant has long had knowledge of such use; that many other similar wheels have been publicly sold and openly used in New York, New Jersey, and Pennsylvania, and in many other states, for a great number of years, and that the right to use the same has not been questioned, disputed, or denied until the present complaint and the proceedings of complainant in this behalf;" and that the patentees, or their assigns, have never run or used water-wheels such as are run or used by the defendants, or had actual or legal possession of the same. Now, al-

though the patentees have incorrectly stated their invention in their patent to be an "improvement in the application of hydraulic power, by methods of combining percussion and reaction," yet in their specification, they have well and clearly described three different hydraulic machines or combinations of machinery, which are undoubtedly valuable inventions, and founded on the application of a principle first discovered or directly applied by the patentees, though perhaps not stated in correct or scientific phraseology. That the patentees are highly meritorious inventors, can not, we think, be disputed; and had they confined their claim to the three machines described in their specification, and other modes of developing the same principle, and producing the same result by similar or equivalent devices, their patent could not, and probably would not have been assailed. But they have (injudiciously, as we think) enumerated nine several parts of the combined machines, which, as distinct machines or devices, they "claim as their invention, and for which they seek an exclusive privilege." If they are the original inventors of each of those, their claim is undoubtedly set forth with sufficient distinctness to entitle them to recover against any person who was charged with infringing their patent, by using any one of them. If they are not, the patent claims too much, and its validity may be assailed on that ground, even though it be of slight value or importance. It is true they have a right to disclaim any thing which has been claimed through "inadvertence or mistake." For when a patentee claims any thing as his own, courts of law can not reject the claim, though he may disclaim it himself. Otherwise, if he sums up the particulars of his invention, he is confined and held to such summary, and his patent must stand or fall by it. Patents should be construed liberally to support the claims of meritorious inventors. But there may be a liberality of construction very injurious to the public, especially if it permits a patentee to couch his specification in such ambiguous terms, that its claims may be contracted or expanded to suit the exigency. We do not wish to be understood as intimating that the plaintiff's specification is justly liable to this charge. We think (with all proper deference to learned judges who have ruled otherwise) that the specification will bear no other construction on the point under consideration, than that which was given to it by the plaintiff and his counsel, and the court, in the trial of Parker v. Hulme [supra]. We do not think it can be fairly charged with such Protean capabilities of construction as have unfortunately been given to it.

But, for the purpose of the present motions, the case stands thus: In the action at law against Hulme in this court, the plaintiff claimed the duplication of reaction wheels on a horizontal shaft to be an infringement of his patent, and called on the court to instruct the jury that such duplication might be made the subject of a patent. The defendant denied the validity of his title on the ground that he was not the first to invent or use such a duplication; and the title of the patentee was supported because the jury found he "was the first to use two or more reaction wheels on a horizontal shaft," the defendant being unable to furnish sufficient proof to the contrary. The present defendants have produced the depositions of ten witnesses, tending to disprove that fact, and have, moreover, shown that on a trial of the same issue in Ohio, where the fact of prior use was clearly proven, the defense was evaded on the ground that the specification did not claim such duplication, and for this singular and single reason—"that the patentee could not be presumed to claim what he must have known he did not invent." In the charge of the judge, in the case of Parker v. Ferguson [Case No. 10,733], in New York (which has been shown in the court), it appears that where the same defense was made and substantiated, the court instructed the jury as follows: "There is some obscurity in the wording of this claim, but it seems to me that the compound wheel they mean, is a wheel constructed by placing two or more of the wheels on a horizontal shaft, with the inner and outer cylinders supplied with water by a spiral spout." Now, how are the defendants, who are supposed to desist from infringing this patent to act? By the verdict and claim made in this state, their duplicate reaction wheels must come down. By the decision and claim made in Ohio, they may stand. And by that in New York, they must be taken down only when the duplicate wheels are connected with cylinders and spiral spouts.

It would be rather hard to compel the defendants to discover the true meaning of a patent, when three learned courts have given it as many different constructions, and the patentees, or their assigns, have been so inconsistent in their claims. Now, we do not say that the patent is invalid on account of its obscurity or ambiguity, but we do say that the trials at law, to establish the plaintiff's title, have left it in such a doubtful shape that the court can not, with clearness and certainty, say what is an infringement of the patent and what is not. The verdicts at law, like the addition of equal positive and negative quantities in algebra, seem to annihilate each other, so far as they affect the present motion.

With regard to the last ground of objection to granting the present motions, we would remark—the chief object of issuing such writs before the final hearing of the cause, is, to prevent irreparable mischief, not to give the complainant the means of coercing a compromise on his own terms, from the inevitable injury that defendants must suffer

by the stoppage of their mills and manufactories.[2] The defendants are not wanton pirators of the plaintiff's invention. They believe sincerely they do not infringe it, or if they have unintentionally done so, they can show that his patent claims more than he is entitled to. They have had many years peaceable and unchallenged possession of the machines which they purchased from patentees with prima facie evidence of title. The notice of infringement, if any there be, has been given after long acquiescence, and just as the patent is about to expire. None of their wheels are direct and palpable piracies of those described in the patent of the plaintiff, and if they do incidentally or partially act upon the principle patented, it requires more knowledge of the science of hydrodynamics to discover it, than many, if any, of them possess. To suddenly stop one hundred mills and manufactories, by injunctions issued at this time, would cause great and irreparable injury, not only to the defendants, but to the public at large, and be of no corresponding benefit to the plaintiff, whose interest it is that they should use his invention if they pay him for it. The plaintiff can be compensated by damages, if the defendants shall be found to have infringed his patent, and they are amply able to pay both damages and costs. In the six or eight weeks which this patent has to run, it can not be expected that the complainant would sell any new licenses. And if the defendants continue to use and pay him for his invention, so much the better for him. There may be, and often are, cases where the patent is for a machine to make some articles of manufacture, or merchandise, in a cheaper method than was before known, and where the source of profit to the patentee arises from his monopoly of the articles, and having no competitors in the market. In such a case, the damage to the patentee by a piracy of his invention might be very great, and the court would issue an injunction on a plain case in the last month or week of the patent's life, or even after the time limited for its expiration, to restrain the sale of the machines, or articles piratically manufactured in violation of the patent, while it was in force. But, in this case, the injunction can not benefit the plaintiff, except by its abuse. His standing by, for so many years, without complaint or demand of compensation, is conclusive evidence that a continuance of a use of his invention, for a few weeks or even months longer, if paid for in the end, will not be an injury of such an

irreparable nature as to require this sharp and hasty remedy.

The issuing of an interlocutory injunction is always a matter of discretion with the court, and depends on the peculiar circumstances of each case. To suspend the operation of a single mill or manufactory, but for a week or two, because some wheel, bucket, or other small portion of its machinery may chance to infringe some dormant patent, would be a doubtful exercise of discretion, where the benefits to result from it to the complainant are so comparatively trifling, and his loss, if any, so perfectly capable of compensation. How much more so, when we are called upon to stop the operations of one hundred? To such a demand we may well use the language of Lord Cottenham. in Neilson v. Thompson, 1 Webst. Pat. Cas. 275: "It seems to me, that stopping the works under the circumstances, is just inverting the purpose for which an injunction is used. An injunction is used for the purpose of preventing mischief. This would be using the injunction for the purpose of creating mischief, because the plaintiff can not possibly be injured." For these reasons the injunctions are refused.

[For other cases involving this patent, see note to Parker v. Hatfield (Case No. 10,736)].

---

[2] [For the purpose of guarding against the abuse of the writ of injunction, here referred to, the legislature of Pennsylvania, on the 6th May, 1844 (Dunl. 923), enacted that "no injunction shall be issued by any court or judge until the party applying for the same shall have given bond, with sufficient sureties, to be approved by said court or judge, conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction." From 3 Am. Law J. 88.]

